

ENTERED
07/29/2019

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| **DONALD R PRESCOTT; dba MR.** | § | **CASE NO: 17-10199** |
| **PRESCOTT** | § | |
| Debtor | § | |
| | § | **CHAPTER  13** |
| | § | |
| **DONALD R. PRESCOTT** | § | |
| Plaintiff | § | |
| | § | |
| **VS.** | § | **ADVERSARY NO. 17-01007** |
| | § | |
| **WELLS FARGO BANK, N.A.** | § | |
| Defendant | § | |

## <u>MEMORANDUM OPINION</u>

Donald R. Prescott initiated an adversary proceeding and filed a complaint against Wells Fargo Bank, N.A.  Mr. Prescott's complaint stems from his 2010 chapter 13 bankruptcy case and alleges nine cause of action against Wells Fargo.  (*See* ECF No. 1).  Mr. Prescott argues that his 2010 chapter 13 plan distributed $71,166.00 to Wells Fargo for its secured claim on Mr. Prescott's home.  (ECF No. 1 at 7).  However, after Mr. Prescott completed his 2010 bankruptcy case, Wells Fargo allegedly violated this Court's Cure Order, misapplied the funds from Mr. Prescott's bankruptcy case, and refused to accept Mr. Prescott's post-discharge mortgage payments.  (ECF No. 1 at 8).

Mr. Prescott and Wells Fargo filed cross motions seeking partial summary judgment on five of Mr. Prescott's causes of action: (i) Wells Fargo's alleged breach of Mr. Prescott's 2010 chapter 13 plan and Cure Order; (ii) Mr. Prescott's objection to Wells Fargo's Proof of Claim in Mr. Prescott's 2017 bankruptcy case; (iii) Mr. Prescott's negligence claims against Wells Fargo;

(iv) Wells Fargo's alleged violation of the automatic stay; and (v) Mr. Prescott's claim for attorney's fees.  (*See* ECF Nos. 48, 49).

For the reasons set forth below, Mr. Prescott is granted judgment on the following claims: (i) Wells Fargo's breach of the Court's Cure Order; (ii) Wells Fargo's automatic stay violations; and (iii) attorney's fees incurred from the stay violation.  Wells Fargo is granted judgment on Mr. Prescott's claims for violation of his 2010 chapter 13 plan.  Mr. Prescott's Claims for negligence, negligent misrepresentation, and his specific damages remain issues of fact to be resolved at trial.

## Background

Donald R. Prescott purchased a home located at 800 Palm Valley Dr. East in Harlingen, Texas (the "Property") on May 19, 2008.  (ECF No. 49 at 4).  To facilitate this purchase, Mr. Prescott executed a Promissory Note for $115,090.00, along with a Deed of Trust, which secured the repayment of the Note.  (ECF No. 49 at 4).  The Note was assigned to Wells Fargo, which currently holds the Note and acts as the servicing agent.  (ECF No. 49 at 4).

In February 2010, Mr. Prescott fell behind on his payment obligations and Wells Fargo agreed to modify the terms of the Note.  (ECF No. 49 at 4).  The modified Note reduced the interest rate from 6.75% to 5.25% and capitalized Mr. Prescott's arrearages.  (ECF No. 49 at 4). This modification lowered Mr. Prescott's monthly payments from $746.47 to $675.78.  (ECF No. 49 at 4).

### Mr. Prescott's First Bankruptcy Case

The relief provided by the modification was short lived and Mr. Prescott filed his first chapter 13 bankruptcy petition on November 29, 2010.  (ECF No. 48 at 15).  Mr. Prescott's bankruptcy schedules listed Wells Fargo as a secured creditor with a claim for $122,231.00 with

$4,423.41 in arrearages. (ECF No. 48 at 15). Mr. Prescott proposed a chapter 13 plan that would resume his payment obligations under the modified Note with monthly payments of $1,051.80 for 60 months and repay his arrearage of $4,785.34 equally over 36 months at 5.25% interest. (Case No. 10-10817; ECF No. 18 at 1). The Court confirmed this Plan on April 7, 2011. (ECF No. 49 at 5). Wells Fargo later filed its proof of claim for $127,987.38, which included $7,632.38 in arrearages and a separate claim of $883.36 for attorney's fees and costs incurred in foreclosure proceedings. However, this proof of claim was filed after the April 20, 2011 claims bar date. (*See* Case No. 10-10817, ECF No. 20; Case No. 17-01007, ECF No. 49 at 5).

Mr. Prescott's chapter 13 plan was confirmed, and he complied with his payment obligations under the Plan. (Case No. 10-10817; ECF No. 26). The Chapter 13 Trustee filed a notice of final cure payment and motion to deem mortgage current on November 24, 2015. (Case No. 10-10817; ECF No. 70). Wells Fargo filed a response, admitting that as of December 9, 2015, Mr. Prescott "paid in full the amount required to cure the default under [Wells Fargo's] claim." (Case No. 10-10817; ECF No. 71 at 1). The response also stated that "As of 12/9/2015, the Creditor agrees that the Debtor(s) is current with all post-petition payments consistent with Section 1322(b0(5), including all fees charges, expenses, escrow and costs." (Case No. 10-10817; ECF No. 71 at 1). Nevertheless, in the very next sentence, Wells Fargo contradicted itself and stated that Mr. Prescott "is due post-petition for 11/01/2015." (Case No. 10-10817; ECF No. 71 at 1). Paragraph 14 of the response also contradicts the previously quoted statement and reflects that Mr. Prescott owed two post-petition mortgage payments for November and December 2015, which totaled $2,090.40. (Case No. 10-10817; ECF No. 71 at 3). If there was confusion as to whether the November 1, 2015 payment was made, it was confusion caused by

Wells Fargo and not by Mr. Prescott.  In any event, as described in the next paragraph, the Court issued an order that resolved the dispute by showing that the next payment was due on December 1, 2015.

On December 23, 2015, the Court entered an Order Deeming the Mortgage Current and Directing Debtor to Resume Payments (the "Cure Order"), which stated: "(i) The claims of the above-listed creditor(s) are deemed current; (ii) all escrow deficiencies, if any, are deemed cured; and (iii) all legal fees, inspection fees and other charges imposed by the creditor, if any, are deemed satisfied in full as of the next payment due date."  (Case No. 10-10817; ECF No. 72). The Order also stated that Mr. Prescott's next mortgage payment was due in December 2015. Mr. Prescott received his discharge on January 6, 2017 and his 2010 bankruptcy case was closed on February 28, 2017.  (*See* Case No. 10-10817; ECF Nos. 78, 83).  The Trustee's final report and accounting stated that Mr. Prescott paid Wells Fargo $63,533.62 in principal and $7,632.38 in arrearages with $837.96 of interest.

### *The Aftermath of Mr. Prescott's First Bankruptcy Case*

Mr. Prescott claims that he attempted to pay his December 2015 installment of $1,045.20 in accordance with the Cure Order, but Wells Fargo allegedly credited that payment to Mr. Prescott's October installment rather than December.  (ECF No. 48 at 19).  Then, in January 2016, Mr. Prescott claims that Wells Fargo refused to accept his next payment because Mr. Prescott owed arrears.  (ECF No. 48 at 19).  Between February and August 2017, Mr. Prescott alleges that Wells Fargo refused to accept his payments, required cash or certified checks, or applied his payments to an "unapplied funds" account rather than credit his balance on the Note. (ECF No. 48 at 19).

After Mr. Prescott received his discharge, Wells Fargo sent a notice of default and demand for cure on April 10, 2017, which claimed that Mr. Prescott owed $9,468.62 in arrearages and threatened acceleration and foreclosure if the arrearages were not cured by May 15, 2017.  (ECF No. 48-4 at 1).  Mr. Prescott then sent Wells Fargo a formal request for an accounting, which Wells Fargo provided on April 19, 2017.  (ECF No. 48 at 21).  Mr. Prescott claims that the accounting revealed that Wells Fargo failed to properly credit his installment payments, placed his chapter 13 funds in an unapplied funds account, and charged improper fees. (ECF No. 48 at 21–24).  Mr. Prescott sent Wells Fargo a second demand letter, under the Texas and Federal Fair Debt Collection Acts to resolve the allegedly incorrect amounts.  (ECF No. 48 at 24).  However, Wells Fargo maintained that Mr. Prescott was in default of his obligations under the Note and proceeded with foreclosure, which was scheduled for June 2017.  (ECF No. 48 at 24).  This led Mr. Prescott to file his second chapter 13 bankruptcy case on May 31, 2017 to prevent the pending foreclosure proceeding.  (ECF No. 48 at 25).

### *Mr. Prescott's Second Bankruptcy Case*

Wells Fargo filed its proof of claim in Mr. Prescott's second bankruptcy case and alleged a right to repayment of $118,490.57 due on Mr. Prescott's mortgage, with an additional $10,769.26 of arrearages payable at 5.25% interest.  (Case No. 17-10199; Claim No. 1 at 2).  Mr. Prescott claims that the payment history attached to Wells Fargo's proof of claim demonstrates that Wells Fargo applied his December 2015 payment to an October 2015 installment, in direct violation of the Court's Cure Order.  (ECF No. 48 at 25).  Additionally, Mr. Prescott claims that Wells Fargo contacted him, demanded amounts due under the Note, and threatened foreclosure while the automatic stay in his second bankruptcy case was in effect.  (ECF No. 48 at 27).

On September 14, 2017, Mr. Prescott filed his complaint against Wells Fargo and initiated this adversary proceeding.  (*See* ECF No. 1).  Mr. Prescott seeks summary judgment for Wells Fargo's alleged breach of his 2010 chapter 13 plan and Cure Order, negligence and misrepresentation while servicing the Note, violation of the automatic stay in his current bankruptcy case, and attorney's fees.  (ECF No. 1 at 14–25).  Wells Fargo filed a cross motion for summary judgment, arguing that it is entitled to judgment as a matter of law on Mr. Prescott's claims for violations of the automatic stay, discharge injunction, Cure Order, negligence, and misrepresentation claims.  (ECF No. 49 at 2).

## Jurisdiction

The District Court has jurisdiction over this proceeding under 28 U.S.C. § 1334(a).  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (K), and (O).  Pursuant to 28 U.S.C. § 157(a), this proceeding has been referred to the Bankruptcy Court by General Order 2012-6.

## Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  FED. R. BANK. P. 7056 incorporates FED. R. CIV. P. 56 in adversary proceedings.  A party seeking summary judgment must demonstrate the absence of a genuine dispute of material fact by establishing the absence of evidence supporting an essential element of the non-movant's case.  *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009).  A genuine dispute of material fact is one that could affect the outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party.  *Gorman v. Verizon Wireless Tex., L.L.C.*, 753 F.3d 165, 170 (5th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986)).

A court views the facts and evidence in the light most favorable to the non-moving party at all times. *Ben-Levi v. Brown*, 136 S. Ct. 930 (2016). Nevertheless, the Court is not obligated to search the record for the non-moving party's evidence. *Keen v. Miller Envtl. Grp., Inc.*, 702 F.3d 239, 249 (5th Cir. 2012). "Summary judgment may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 538 (5th Cir. 2015), *cert. denied*, 136 S. Ct. 1715 (2016).

A party asserting that a fact cannot be or is genuinely disputed must support that assertion by citing to particular parts of materials in the record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support that fact. FED. R. CIV. P. 56(c)(1). The Court need consider only the cited materials, but it may consider other materials in the record. FED. R. CIV. P. 56(c)(3). The Court should not weigh the evidence. *Wheat v. Fla. Par. Juvenile Justice Comm'n*, 811 F.3d 702, 713 (5th Cir. 2016). A credibility determination may not be part of the summary judgment analysis. *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014). However, a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. FED. R. CIV. P. 56(c)(2). Moreover, the Court is not bound to search the record for the non-moving party's evidence of material issues. *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014).

"The moving party bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Nola Spice Designs, LLC v. Haydel Enterprises,*

*Inc.*, 783 F.3d 527, 536 (5th Cir. 2015).   The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.

If the movant bears the burden of proof on an issue, a successful motion must present evidence entitling the movant to judgment at trial.   *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986).   Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine dispute of material fact.   FED. R. CIV. P. 56(c)(1); *Celotex*, 477 U.S. at 322–24.   The non-moving party must cite to specific evidence demonstrating a genuine dispute.   FED. R. CIV. P. 56(c)(1); *Celotex*, 477 U.S. at 324.   The non-moving party must also "articulate the manner in which that evidence supports that party's claim."   *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010).   Even if the movant meets its initial burden, the motion should be granted only if the non-movant cannot show a genuine dispute of material fact.

## <u>Analysis</u>

### <u>Breach of Mr. Prescott's 2010 Confirmed Plan</u>

Mr. Prescott seeks summary judgment on Wells Fargo's alleged breach of his 2010 chapter 13 plan.   (ECF No. 48 at 29).   Mr. Prescott claims that Wells Fargo failed to credit his monthly obligations under the Note, and instead placed several months of payments in an "unapplied funds" account.   (ECF No. 48 at 30).   This allegedly resulted in the accrual of additional interest and fees in violation of 11 U.S.C. § 1327(a).   (ECF No. 48 at 29).

Wells Fargo responds that Mr. Prescott's purported fees were incurred pre-petition after Wells Fargo attempted to foreclose on the Property and were authorized under the terms of the Note.   (ECF No. 49 at 8).   Wells Fargo also contends that the evidence Mr. Prescott cited fails to

demonstrate that he was charged any additional interest during his 2010 bankruptcy case. (ECF No. 49 at 9–10).

Mr. Prescott cites a Customer Account Activity Statement he received as evidence of Wells Fargo's alleged breach of his chapter 13 plan. (ECF No. 48 at 29–30). Mr. Prescott claims that Wells Fargo placed $1,051.80 in an unapplied funds account instead of applying the payment to his installment obligations as required by the terms of his confirmed plan. (ECF No. 48 at 29–30). The Statement shows that on January 26, 2011, Wells Fargo received $2,103.60 from Mr. Prescott. (ECF No. 48-1 at 1). Wells Fargo then applied $141.02 to principal, $534.75 to interest, and $376.16 to escrow, which totaled $1,052.03 towards his arrearage, leaving a balance of $1,051.57. In the comments section for the January 26, 2011 payment, Wells Fargo stated, "remaining funds unapplied." (ECF No. 48-1 at 1). Mr. Prescott claims that Wells Fargo continued this practice throughout his 2010 bankruptcy case "for undetermined periods, causing interest to accrue on principal balances that would have been reduced. . . ." (ECF No. 48 at 30). Additionally, the failure to promptly credit Mr. Prescott's payments allegedly allowed Wells Fargo to apply funds towards fees rather than installments payments, while simultaneously accruing other fees and expenses during his 2010 bankruptcy case. (ECF No. 48 at 31–32).

Regardless of the evidence Mr. Prescott presented through Wells Fargo's Statement, his claim is contradicted by the terms of the Court's Cure Order. After Mr. Prescott completed his payments, the Court issued its Cure Order on the Trustee's Motion on December 23, 2015. The Cure Order stated:

> (i) The claims of [Wells Fargo] are deemed current; (ii) all escrow deficiencies, if any, are deemed cured; and (iii) all legal fees, inspection fees and other charges imposed by the creditor, if any, are deemed satisfied in full as of the next payment due date set forth below. The creditor shall be solely responsible for any shortfall or failure to respond to the Trustee's notice and motion.

(Case No. 10-10817; ECF No. 72 at 1).   No party challenged the Cure Order through reconsideration or appeal after it was issued, and it is a final, binding Order on the parties.  If any alleged fees or expenses accrued during Mr. Prescott's 2010 bankruptcy case, the Cure Order shifted their responsibility to Wells Fargo rather than Mr. Prescott.  Similarly, even if Wells Fargo failed to credit Mr. Prescott's payments to his mortgage obligations, the terms of the Cure Order plainly held that Mr. Prescott was current on his mortgage payments and had satisfied his arrearages through his chapter 13 plan.  (Case No. 10-10817; ECF No. 72 at 1).  The Cure Order precluded any damages for the alleged misapplication of his payments or accrual of fees during Mr. Prescott's 2010 bankruptcy case.

There is a distinction between Wells Fargo *internally* detailing costs incurred in their records and Wells Fargo *imposing* those costs on Mr. Prescott.  *See Padilla v. Wells Fargo Home Mortg., Inc. (In re Padilla)*, 379 B.R. 643, 662 (Bankr. S.D. Tex. 2007).  "The Bankruptcy Code does not prohibit . . . maintaining internal records of costs incurred."  *Id.*  Even if the records Wells Fargo provided Mr. Prescott included interest costs and fees during the pendency of Mr. Prescott's chapter 13 plan, the Cure Order barred collection of those costs and fees, eliminating any prejudice to Mr. Prescott from the internal recordation of those costs.   Accordingly, Mr. Prescott's motion for summary judgment regarding breach of his 2010 confirmed chapter 13 plan is denied.

<u>Breach of the Court's Cure Order</u>

Mr. Prescott also claims that Wells Fargo breached the Court's Cure Order, which was issued on December 23, 2015.  (ECF No. 48 at 32).  Wells Fargo allegedly failed to credit Mr. Prescott's first payment in compliance with the Court's Cure Order, which found Mr. Prescott current through November 2015.  (ECF No. 48 at 33).  Wells Fargo refutes that Mr. Prescott

incurred any damages and argues that its use of a suspense account did not violate the Cure Order.  (ECF No. 49 at 10–11).

The Bankruptcy Code balances a creditor's right to protect their interest in collateral and debtor's ability to earn a fresh start through 11 U.S.C. § 1322.  Section 1322(b)(2) states that a chapter 13 plan may not modify a creditor's rights to a security interest in real property that is a debtor's principal residence.  However, § 1322(b)(5) also provides a debtor with the opportunity to cure arrearages through their chapter 13 plan, while maintaining current payments.  Thus, a proposed chapter 13 plan must provide a creditor with sufficient monthly payments to protect its interest in collateral while simultaneously allowing a debtor to cure his arrearages.  Once confirmed, both the creditor and debtor are bound to abide by the terms of the chapter 13 plan under 11 U.S.C. § 1327(a).  This requires that creditors properly credit a portion of a debtor's payment to arrearages and current payments so that debtors who comply with their chapter 13 plans are granted a fresh start.  *Rodriguez v. Countrywide Home Loans, Inc., (In re Rodriguez)*, 396 B.R. 436, 442 (Bankr. S.D. Tex. 2008).

Mr. Prescott claims that Wells Fargo's failure to comply with the Cure Order deprived him of this fresh start.  Mr. Prescott cites to the Customer Account Activity Statement discussed earlier as evidence that Wells Fargo failed to comply with the Cure Order.  (ECF No. 48 at 33). The statement allegedly demonstrates that on December 23, 2015, when the Cure Order was issued, Wells Fargo applied his payment to an installment from October 2015 rather than the debt owed in December 2015.  (ECF No. 48 at 33).  This allegedly placed Mr. Prescott two months in default, which then precipitated Wells Fargo's subsequent foreclosure attempt and his second bankruptcy case.  (ECF No. 48 at 4).

Mr. Prescott's claim has merit.  Unlike Mr. Prescott's previous claim regarding breach of his chapter 13 plan, holding Mr. Prescott liable for the November 2015 installment is the sort of external prejudice which is specifically prohibited by the Bankruptcy Code.  *See In re Padilla*, 379 B.R. 643, 662.  When Wells Fargo filed its proof of claim in Mr. Prescott's current bankruptcy case, it attached a loan payment history as supporting documentation.  (Case No. 17-10199; Proof of Claim No. 1-1 at 5).  The loan payment history has two entries dated December 23, 2015, which reflect Mr. Prescott's payment of $1,045.20.  (Case No. 17-10199; Proof of Claim No. 1-1 at 5).  However, the loan payment history also shows that Wells Fargo credited this payment to Mr. Prescott's November 1, 2015 contractual due date, leaving him with an arrearage of $1,045.20, which was carried into January 2016.  (Case No. 17-10199; Proof of Claim No. 1-1 at 5).  This is corroborated by similar documents Wells Fargo sent Mr. Prescott, which Mr. Prescott provided in his motion for summary judgment.  (*See* ECF No. 48-1 at 6).

The source of this discrepancy was likely the response Wells Fargo filed on December 9, 2015, to the Trustee's Notice of Final Cure Payment.  In its response, Wells Fargo admitted that Mr. Prescott "paid in full the amount required to cure the default."   The response also stated that "As of 12/9/2015, the Creditor agrees that the Debtor(s) is current with all post-petition payments consistent with Section 1322(b0(5), including all fees charges, expenses, escrow and costs." (Case No. 10-10817; ECF No. 71 at 1).  Wells Fargo also contradictorily stated that Mr. Prescott owed payments for both November 1 and December 1, 2015, which totaled $2,090.40. (Case No. 10-10817; ECF No. 71 at 1).  No hearing was held regarding Wells Fargo's response and on December 23, 2015, the Court entered its Cure Order, which deemed Mr. Prescott current on his mortgage payment and that his next payment was due in December 2015.  (Case No. 10-10817; ECF No. 72).

In the context of this dispute, the reason for this discrepancy is irrelevant; Wells Fargo's claim for the November 2015 payment was eliminated by the Cure Order. Wells Fargo failed to challenge the Cure Order via reconsideration or appeal and it became a final, binding order, which held that Mr. Prescott's next payment was due on December 1, 2015. Accordingly, Wells Fargo's attempt to collect the November 2015 mortgage payment is a violation of the Court's Cure Order, which deemed Mr. Prescott current on his mortgage payments through December 2015.

The burden then shifts to Wells Fargo to demonstrate that a genuine issue of material fact exists regarding Wells Fargo's attempt to collect the November 2015 mortgage payment in Mr. Prescott's first bankruptcy case. Wells Fargo raises no issue of material fact regarding this issue. Instead, Wells Fargo argues it had a right to use a suspense account to service Mr. Prescott's loan. (ECF No. 49 at 11–12). As a result, Mr. Prescott is entitled to judgment on Wells Fargo's violation of the Court's Cure Order.

As set forth above, Wells Fargo may use its internal suspense accounts. *See In re Padilla*, 379 B.R. 643, 662. However, when Wells Fargo's internal accounting results in an external declaration of default and an attempt to foreclose on Mr. Prescott's home, it has committed a blatant violation of the Court's Cure Order that resulted in prejudice to Mr. Prescott.

<u>Objection to Wells Fargo's Proof of Claim</u>

Mr. Prescott also seeks summary judgment on his current objection to Wells Fargo's Proof of Claim. (ECF No. 48 at 35). Mr. Prescott alleges that Wells Fargo committed numerous errors after his 2010 bankruptcy case, which inflated Wells Fargo's proof of claim in his current bankruptcy case. (ECF No. 48 at 36).

A portion of Mr. Prescott claims arose from Wells Fargo's alleged failure to credit his account for payments made during his first bankruptcy case and the corresponding accrual of fees and interest. (ECF No. 48 at 36–37). As discussed earlier, Mr. Prescott's allegations that he was damaged by Wells Fargo's failure to properly credit his payments in accordance with the terms of his chapter 13 plan were precluded by the Court's Cure Order, which deemed his mortgage current as of December 23, 2015 and placed the responsibility for any shortfall on Wells Fargo. Further, Wells Fargo's proof of claim shows that Wells Fargo routinely used the unapplied funds account to hold Mr. Prescott's payments, which were then credited to his account balances the same day. (Case No. 17-10199; Proof of Claim No. 1-1 at 5). Accordingly, Wells Fargo is granted judgment regarding Mr. Prescott's claims prior to the entry of the Cure Order.

Secondly, Mr. Prescott claims that Wells Fargo also failed to properly credit his account for a payment of $801.00, which he made on August 31, 2016. (ECF No. 48 at 37). However, this payment occurred after Mr. Prescott had completed his required payments in his first bankruptcy case, and thus could not have violated the terms of Mr. Prescott's chapter 13 plan. Thus, Wells Fargo is granted judgment for this alleged violation of Mr. Prescott's chapter 13 plan.

Finally, Mr. Prescott also alleges that Wells Fargo failed to comply with the Court's Cure Order, which resulted in an inflated balance. (ECF No. 48 at 38). As discussed earlier, Wells Fargo failed to comply with the Cure Order and included a past due payment November 2015 in Mr. Prescott's balance. Accordingly, Mr. Prescott is granted judgment regarding the portion of Wells Fargo's proof of claim that corresponds to the November 2015 payment.

<u>Negligence Claims</u>

Mr. Prescott alleges that Wells Fargo was negligent in failing to comply with the Court's Cure Order, in responding to his subsequent requests for accountings, and for making collection demands on the debt Mr. Prescott allegedly owed.  (ECF No. 48 at 36–43).  Wells Fargo responds that Mr. Prescott's negligence claims are foreclosed by the economic loss doctrine, because under their contractual relationship, Wells Fargo did not owe Mr. Prescott any duty. (ECF No. 49 at 14).

To prevail on a negligence claim, Mr. Prescott must establish the existence of a duty between Wells Fargo and himself.  *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005). However, under Texas law, courts are tasked with distinguishing between tortious breaches of duty and contractual breaches of duty.  *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986).  To determine which breach has occurred, courts examine the nature of the injury. *Id.*  "When the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone" and no negligence claim may be pursued.  *Id.*

In this case, Mr. Prescott claims that Wells Fargo's alleged negligence caused damage to his credit, necessitated the filing of a second chapter 13 bankruptcy case, and prevented him from obtaining a fresh start at the conclusion of his first bankruptcy case.  (ECF No. 48 at 43). Some of the damages Mr. Prescott alleges are quintessential economic injuries, such as harm to his credit score, improper crediting of his payments, and failure to provide an accurate accounting.  These alleged injuries stem from Wells Fargo's failure to perform duties required under the Note and accordingly are precluded in a negligence action by the economic loss doctrine.  *See Belanger v. BAC Home Loans Servicing, L.P.*, 839 F. Supp.2d 873, 877 (W.D. Tex. 2011).

However, Mr. Prescott also claims that he was injured by Wells Fargo's failure to comply with the Court's Cure Order and his confirmed chapter 13 plan in his first bankruptcy case. (ECF No. 48 at 43).   Rather than contractual obligations, Wells Fargo was bound by the Bankruptcy Code and common law to comply with the Court's orders in Mr. Prescott's first bankruptcy case.   These injuries do not "sound in contract" and indicate that Wells Fargo owed Mr. Prescott a duty beyond a contractual duty a mortgagor owes a mortgagee.   *Trevino v. HSBC Mortg. Servs., Inc. (In re Trevino)*, 535 B.R. 110, 152 (Bankr. S.D. Tex. 2015).   Accordingly, a question of fact exists for trial regarding whether Mr. Prescott's alleged negligence claims arise solely from contractual obligations under the Note or also breach of other duties imposed by common law or the Bankruptcy Code.

<u>Negligent Misrepresentation Claims</u>

Wells Fargo seeks judgment on Mr. Prescott's claim for negligent misrepresentation. (ECF No. 49 at 14).   Wells Fargo purports that Mr. Prescott's claims fail as a matter of law because a negligent misrepresentation claim requires that the false information is implemented as a part of the plaintiff's business.  (ECF No. 49 at 14).

Wells Fargo is correct that one element of a negligent misrepresentation claim is that a "defendant supplied false information for the guidance of others in their business."   *Hurd v. BAC Home Loans Servicing, LP,* 880 F. Supp.2d 747, 762 (N.D. Tex. 2012).   However, numerous courts have allowed negligent misrepresentation claims in the context of lenders and mortgagors. *Hurd*, 880 F. Supp.2d at 762–63; *In re Trevino*, 535 B.R. at 151.   Furthermore, a duty always exists to correct one's own false or misleading statements.   *Hurd*, 880 F. Supp.2d at 762–63; *In re Trevino*, 535 B.R. at 151; RESTATEMENT (SECOND) OF TORTS § 551 (1977).   In this case, it is plausible that Wells Fargo failed to properly credit Mr. Prescott's account for the November

2015 Mortgage payment as required by the Cure Order, communicated Mr. Prescott's alleged default to credit reporting agencies, and failed to correct that misrepresentation, which in turn injured Mr. Prescott by damaging his credit.  (ECF No. 48 at 43).  Accordingly, Wells Fargo's motion for summary judgment regarding Mr. Prescott's negligent misrepresentation claim is denied.

<u>Violation of the Automatic Stay</u>

Mr. Prescott also claims that Wells Fargo violated the automatic stay in his current bankruptcy case by contacting him and making demands for payments.  (ECF No. 48 at 44). Wells Fargo conversely seeks judgment denying the alleged stay violation because Mr. Prescott failed to plead specific facts demonstrating that a stay violation occurred.  (ECF No. 49 at 11).

Although Mr. Prescott argues that Wells Fargo made these demands after his bankruptcy petition was filed, the deposition evidence he cites fails to establish when these alleged demands were made.  In his deposition, Mr. Prescott identifies multiple instances where Wells Fargo allegedly entered his property, contacted him via telephone, and left messages for him demanding repayment.  (ECF No. 48-9 at 60–66).  However, Mr. Prescott was unable to provide dates when these alleged stay violations occurred.  (ECF No. 48-9 at 60–66).  As a result, the Court is unable to determine whether these alleged demands occurred after Mr. Prescott filed his bankruptcy petition in his second bankruptcy case and the automatic stay was in effect.

Mr. Prescott also cites his wife, Shelli Prescott's, journal as evidence that the alleged stay violations occurred.  (ECF No. 48 at 44).  Unlike Mr. Prescott's deposition, Ms. Prescott identifies specific post-petition dates on June 6th and 7th of 2017, when Wells Fargo contacted her and made collection demands on the debts owed.  (ECF No. 48-14 at 16–17).  Under the summary judgment standard, this evidence is sufficient to establish that Wells Fargo attempted to

collect a debt from Mr. Prescott while the automatic stay was in effect.  11 U.S.C. § 362(a)(6).
The burden then shifts to Wells Fargo to demonstrate that either a genuine issue of material fact
exists, or object that Ms. Prescott's journal "cannot be presented in a form that would be
admissible in evidence."  FED. R. CIV. P. 56(c)(2).  Wells Fargo has failed to perform either,
summarily concluding that it is entitled to summary judgment because Mr. Prescott "has pled no
specific facts, nor can he, to support his claim that Wells Fargo violated the automatic stay in the
[s]econd [c]ase."  (ECF No. 49 at 11).  This fails to raise a question of fact regarding Ms.
Prescott's journal entries, nor does it dispute the admissibility of Ms. Prescott's journal.
Accordingly, Mr. Prescott is entitled to judgment on Wells Fargo's stay violations.

Attorney's Fees

Mr. Prescott claims that he is entitled to his reasonable attorney's fees as a result of Wells
Fargo's alleged breaches of the automatic stay, and the Court's Confirmation and Cure Orders.
(ECF No. 48 at 44).

The overriding assumption is that the American Rule, which requires that each party pay
its own attorney's fees, controls.  *Baker Botts, LLP v. ASARCO, LLC*, 135 S.Ct. 2158, 2164
(2015).  However, 11 U.S.C. § 362(k) allows for attorney's fees in cases where injury occurs
because of a willful violation of a stay.  Mr. Prescott has established that Wells Fargo committed
a willful violation of the automatic stay by contacting him twice and demanding repayment while
the automatic stay was in effect during his second bankruptcy case.  This entitles Mr. Prescott to
recover his reasonable attorney's fees related to Wells Fargo's stay violation.

Damages

While Mr. Prescott has alleged that Wells Fargo's failure to comply with the Court's
Cure Order has caused him to pay additional interest and fees, he failed to provide a proper

accounting that demonstrates the exact amount of damages he has incurred as a result of this violation.   Accordingly, Mr. Prescott's pecuniary damages remain a question of fact for resolution at trial.

**<ins>Conclusion</ins>**

The Court will issue a Judgment consistent with this Memorandum Opinion.

SIGNED **<ins>July 29, 2019.</ins>**

Marvin Isgur

UNITED STATES BANKRUPTCY JUDGE
